

**ORDERED in the Southern District of Florida on February 7, 2024.**



Erik P. Kimball
Chief United States Bankruptcy Judge

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                                    Case No. 23-17590-EPK
                                                          Chapter 11
MV Realty PBC, LLC, *et al.*,                             (Jointly Administered)

    Debtors.
_____/

MV Realty PBC, LLC, *et al.*,

    Plaintiffs,

v.                                                        Adv. Proc. No. 23-01211-EPK

Office of the Attorney General,
State of Florida, Department of
Legal Affairs, *et al.*,

    Defendants.
_____/

## ORDER ABSTAINING FROM AND DISMISSING ADVERSARY PROCEEDING

This matter comes before the Court on the following motions to dismiss this adversary

proceeding:

(1) *Motion to Dismiss Adversary Proceeding by Defendant States Massachusetts, New Jersey, North Carolina, and Pennsylvania* [ECF No. 55];

(2) *Defendant Office of the Attorney General of Indiana's Motion to Dismiss Amended Adversary Complaint* [ECF No. 61];[1]

(3) *State of Ohio, Department of Commerce's Memorandum in Support of the Motion to Dismiss Adversary Proceeding* [ECF No. 65];[2] and

(4) *Motion to Dismiss Amended Adversary Complaint* [ECF No. 68] filed by the State of Florida.

The Court carefully considered the foregoing motions to dismiss (collectively, the "Motions to Dismiss"), the *Amended Adversary Complaint for Injunctive Relief* [ECF No. 41] (the "Complaint"), the *Plaintiffs' Omnibus Response to Defendants' Motions to Dismiss* [ECF No. 105], and the related replies [ECF Nos. 133, 134, 135, and 136].

## SUMMARY OF RULING

The defendants raised a number of arguments in their Motions to Dismiss. In the end, the Court need only address a few of the defendants' arguments to rule on the Motions to Dismiss.

This Court has subject matter jurisdiction over the present adversary proceeding, which is a suit that could only be brought in the court presiding over the plaintiffs' chapter 11 cases. As an action under 11 U.S.C. § 105(a) aimed at protecting property of the estate under 11 U.S.C. § 541 consisting of substantial contract rights and documents recorded in real property records, this adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). However, although this Court has subject matter jurisdiction over this core proceeding, the Court will abstain from and dismiss this action for two reasons. First, the relief requested by the plaintiffs constitutes an unprecedented attempt to interfere with

---

[1] Although the plaintiffs and the State of Indiana have agreed to abate this adversary proceeding as it relates to Indiana [ECF No. 158], because this ruling necessarily implicates all relief requested against the State of Indiana, Indiana's motion to dismiss will be granted as well.

[2] The plaintiffs entered into a stipulation with the Ohio defendant that settles this adversary proceeding with regard to the Ohio defendant. ECF No. 225. Any ruling approving such stipulation will remain binding on the parties after entry of this Order.

the procedural and substantive rights of the defendant states under applicable non-bankruptcy law in actions they are pursuing elsewhere, a threat to the interests of comity of the highest order, meriting abstention under 28 U.S.C. § 1334(c)(1).  Second, even if all of the allegations in the Complaint are proven, the circumstances of this case do not warrant the exceptional relief of enjoining, in any regard, the defendants' actions which are explicitly excepted from the automatic stay under 11 U.S.C. § 362(b)(4).

PLAINTIFFS' BUSINESS

The nine plaintiffs and their 25 affiliates filed voluntary chapter 11 petitions on September 13, 2023.  The plaintiffs are operating entities doing business in the states of Florida, Pennsylvania, New Jersey, Ohio, North Carolina, Massachusetts, Indiana, and Illinois, and the ultimate parent entity of these operating entities.

According to the Complaint, in 2018 the plaintiffs implemented the "Homeowner Benefit Program."  The operating plaintiffs entered into Homeowner Benefit Agreements ("HBAs") with residential homeowners.  The plaintiffs state that the HBAs are not listing agreements but are contracts having a term of 40 years "under which the plaintiffs pay an upfront cash payment to homeowners in exchange for the exclusive right to list a homeowner's home if the homeowner ever decides to sell their home."  Under the HBAs, if a homeowner wishes to sell their home the plaintiffs or their assignees list and sell the home for a commission of 6%.  If the home does not sell within 6 months, the homeowner may sell the property by other means for a period of 60 days, failing which the plaintiffs retain their rights under the HBA.  If a homeowner breaches an HBA, there is an early termination fee equal to 3% of the greater of the market value of the home on the date of the HBA or the market value at the time of breach.  In spite of the plaintiffs' argument that an HBA does not create a present lien on a homeowner's property, the plaintiffs reserve the right to record a mortgage or memorandum of the HBA in the relevant real property records and it appears

that they initially did so with regard to every HBA.  In the Complaint, the plaintiffs state that there are approximately 34,000 outstanding HBAs.  More recently, the debtors have suggested there are approximately 38,000 existing HBAs plus about 2,000 HBAs under which the debtors have received payment.  These figures are for all HBAs held by all debtors in these jointly administered chapter 11 cases, not just the plaintiffs in this adversary proceeding.  The plaintiffs state that about 40% of the outstanding HBAs are held by the plaintiffs.

PENDING STATE ACTIONS AGAINST THE PLAINTIFFS

Each of the defendants commenced an action against one or more of the plaintiffs prior to the filing of these bankruptcy cases.  Those pre-bankruptcy state actions are summarized in the Complaint and also in a table at Exhibit B to the Complaint.  Documents indicating the defendants' requests for relief in those actions are attached as Exhibits C through I to the Complaint.  Each of the state actions is pending in a state judicial or administrative forum, other than Indiana where the matter is pending in a federal district court.

As the plaintiffs acknowledge in the Complaint, the defendants "allege wrongdoing primarily related to unfair or deceptive trade practices and also including telemarketing violations" and that the recording of memoranda or other documents relating to the HBAs "unfairly or deceptively interferes with the homeowner's ability to sell the home or access financing with respect to their homes."  In the state actions, the defendants seek a variety of relief including:  rescission of the HBAs and recorded documents and related declaratory relief; discharge of liens; permanent injunctions against enforcement of existing HBAs and creation of new HBAs; injunctions relating to marketing of HBAs; cancellation of the relevant plaintiff's corporate formation; disgorgement of profits; civil penalties; restitution to consumers; dismissal of pending lawsuits by plaintiffs against consumers; and fees and costs. In Ohio, the state action is brought by the Division of Real Estate and Professional Licensing

and the relief requested is limited to injunctions against the unlicensed practice of real estate and the execution of agency agreements not in accordance with Ohio law.  In addition to the plaintiffs, state actions in New Jersey, Pennsylvania, Ohio, Florida, North Carolina, Indiana, and North Carolina seek relief against certain of the plaintiffs' officers and persons affiliated with the plaintiffs as real estate agents.  Only Massachusetts seeks relief solely against relevant plaintiffs.

Prior to these bankruptcy cases, Massachusetts, North Carolina, Ohio, and Florida sought preliminary injunctions in their state actions.  Florida's request for preliminary injunction is stayed pending this Court's ruling in the present adversary proceeding.

On August 1, 2023, an agreed preliminary injunction was entered in the Ohio action that enjoins the relevant plaintiff and certain associated individuals from practicing real estate law while unlicensed, from allowing, encouraging, or promoting the unlicensed practice of real estate by their officers or employees, from entering into HBAs or any other "right-to-list home sale agreement," and from using real estate listing agreements and/or agency agreements that do not comply with Ohio law.

In February 2023, Massachusetts obtained an order enjoining the relevant plaintiffs from marketing HBAs in certain ways, originating new HBAs secured by a mortgage, exercising a power of sale in any mortgage, entering into new HBAs without complying with certain restrictions, and collecting certain administrative fees.  The order directed the relevant plaintiffs to remove all mortgages previously filed in Massachusetts and this was accomplished prior to the filing of these bankruptcy cases.

In August and September 2023, North Carolina obtained orders enjoining the relevant plaintiffs from recording any memoranda relating to an HBA, claiming any lien, and pursuing any termination fee, liquidated damages, or other penalty, among other restrictions.  The North Carolina court ordered termination of all recorded memoranda and

*lis pendens* relating to HBAs.  Under the North Carolina preliminary injunction, the relevant plaintiffs retain the right to collect a real estate commission and administrative fees for actual services rendered in certain circumstances and may pursue legal action or arbitration to recover damages for breach of an HBA in certain circumstances.  However, upon learning of the filing of these bankruptcy cases, the North Carolina court stayed all deadlines in its preliminary injunction order.  As a result, none of the recorded documents have been terminated.

In the preliminary injunction orders entered in both Massachusetts and North Carolina, following appropriate notice and opportunity for the relevant plaintiffs to respond including the opportunity to provide contrary evidence, and after detailed and thorough analysis of the evidence in light of applicable standards, the state courts found that the states have a substantial likelihood of success in those suits.  If Massachusetts and North Carolina are successful in those actions, the relevant plaintiffs likely will lose the value of their existing HBAs and may cease to do business in those states.

### RELIEF REQUESTED IN THIS ADVERSARY PROCEEDING

The Complaint in this adversary proceeding presents a single count for relief seeking injunctions under 11 U.S.C. § 105(a).  The Complaint requests only a preliminary injunction; there is no explicit request for a permanent injunction.   There are four components to the requested injunctive relief in the existing Complaint.

First, the plaintiffs ask the Court to prohibit and enjoin the defendants "from taking any actions against property of the estate, within the meaning of 11 U.S.C. § 541(a) . . . including, without limitation, actions that result in cancellation, rescission, or modification of any Homeowner Benefit Agreements . . ., memoranda, mortgage, or any proceeds of the foregoing, pending a final adjudication on the merits (in other words, a final, non-appealable order) on the Primary State Actions."  If granted, this relief would have two broad impacts.

It would make preliminary injunction orders entered last year in Massachusetts and North Carolina substantially unenforceable.  And it would render any material order or judgment in favor of the defendants unenforceable unless and until the relevant state was successful after the last possible appeal in their pending actions.  In other words, the plaintiffs effectively seek a prospective stay pending appeal of any adverse ruling in the pending state actions, without the need to comply with requirements of applicable law including the posting of bond, unless and until the relevant plaintiff is unsuccessful in the last possible appeal, which could theoretically include a petition for *writ of certiorari* to the United States Supreme Court in each instance.  The practical effect of such an injunction would be to permit the plaintiffs to continue their business practices in connection with existing HBAs, even if they lose in the pending state actions, until they exhaust all appeals.

Second, the plaintiffs ask the Court to prohibit and enjoin the defendants "from seeking to enforce or collect upon any monetary award issued in the Primary State Actions . . . including, without limitation, any fine, penalty, disgorgement, restitution, or award of attorneys' fees, costs, or investigative costs, outside this Court and directing that the Defendants must file a proof of claim in the [relevant chapter 11 case] in order to be entitled to receive any distribution on account of any such proof of claim."  The intent of this provision is to funnel the states to this Court by requiring them to file proofs of claim in these jointly administered bankruptcy cases in order to share in any distributions from these cases.

This second request for relief is unnecessary as what it seeks is exactly what this Court will require in any case.  The adjustment of the debtor-creditor relationship and the administration of distributions from the bankruptcy estate are principal components of this Court's equity jurisdiction.  In order to share in any distribution from these bankruptcy estates creditors, including the defendants, must file proofs of claim.  If a plan is eventually confirmed, with extremely limited exceptions, any claim not filed in these cases will be

discharged under 11 U.S.C. § 1141(d).  It does not matter that the various state suits are police and regulatory power actions exempt from the automatic stay under 11 U.S.C. § 362(b)(4), as that provision recognizes that the defendants nevertheless cannot enforce any money judgments against the plaintiffs.  Their only avenue for collection of a monetary award from these bankruptcy estates will be to file proofs of claim here.  The Court has already entered several orders recognizing some of the state actions as exempt from the automatic stay but explicitly excluding collection of any monetary award.  ECF Nos. 170, 171, 172, and 414; Case No. 23-17590.

The State of Florida complains that the plaintiffs' second request for relief would inappropriately prohibit Florida from pursuing collection outside these bankruptcy cases of any claim excepted from discharge under 11 U.S.C. §§ 1141(d)(6) and 523(a)(2).  There is conflicting case law on whether section 1141(d)(6) excepts from discharge a claim held by a government entity arising from harm to others.  *Compare TK Holdings Inc. v. Hawai'i (In re TK Holdings Inc.)*, No. 17-51886 (BLS), 2018 Bankr. LEXIS 414 (Bankr. D. Del. Feb. 14, 2018), *opinion vacated due to settlement between the parties*, 2018 Bankr. LEXIS 4126 (Bankr. D. Del. Apr. 9, 2018) *with United States v. Fusion Connect, Inc. (In re Fusion Connect, Inc.)*, 634 B.R. 22 (S.D.N.Y. 2021).  There is no binding precedent in this circuit.  It is also unclear whether a creditor of a corporate chapter 11 debtor must file a complaint under section 523(c) to obtain a determination of non-dischargeability under section 1141(d)(6).  *Compare* Collier on Bankruptcy ¶ 1141.05[1][b][i] (Richard Levin & Henry J. Sommer eds., 16th ed.) (stating that a governmental creditor must file a timely complaint under section 523(c) and citing Fed. R. Bankr. P. 4007(c)) *with United States ex rel. Minge v. Hawker Beechcraft Corp. (In re Hawker Beechcraft, Inc.)*, 515 B.R. 416 (S.D.N.Y. 2014).  If a complaint was required, the deadline in this case was January 8, 2024 and no creditor filed such a complaint.  In the end, it does not matter whether Florida retains the possibility of excepting any claim from

discharge in these cases. Under 11 U.S.C. § 1141(a), Florida will be bound by the terms of any confirmed plan even if it does not file a claim. The debtors' sole source of revenue is enforcement of existing HBAs. The HBAs themselves and the debtors' rights thereunder are property of the bankruptcy estates under 11 U.S.C. § 541(a). The debtors do not intend to enter into any new HBAs, so they will not generate any new assets after confirmation. Any confirmable chapter 11 plan in these cases will necessarily devote all available revenue and existing cash to administration and distributions to creditors. There will be no assets for anyone to collect outside a confirmed plan.

Third, the plaintiffs ask the Court to prohibit and enjoin the defendants "from (i) requesting, obtaining, or enforcing rescission of any HBAs, cancellation of any memoranda, mortgage, other recorded notice, or (ii) requesting, obtaining, or enforcing any monetary amount payable to any homeowner or party to a HBA, including, without limitation, by disgorgement, restitution, or money damages." The first component of this request, and part of the second, ask this Court to order that the state defendants cannot even ask for rescission of the HBAs or related recorded documents, cannot even ask for monetary relief, and cannot receive judgments providing any of this relief. This is inconsistent with the debtors' statements to this Court, including in response to the Motions to Dismiss, that they do not want this Court to enjoin any of the state actions outright, but intend to continue litigating those actions in the form pending through judgment and appellate process if necessary. The request that this Court enjoin the defendants from enforcing any relief granted to them rescinding HBAs or documents recorded in support of HBAs is the same as requested in the plaintiffs' first request for preliminary injunction, but without the time limitation tied to the plaintiffs' last possible appeal. In other words, even if the plaintiffs lose on those issues in the pending state actions, they want this Court to invalidate any attempt to rescind the HBAs or recorded documents. This is inconsistent with the plaintiffs' repeated statements that

they seek this relief only until entry of final, non-appealable judgments. Finally, in the third request for relief, the debtors again ask this Court to enjoin direct collection of any monetary award against a plaintiff debtor. Although the third request for relief does not reference the claims process here, this request appears to be a restatement of the plaintiffs' second request for relief, which the Court already addressed.

Fourth, the plaintiffs seek a preliminary injunction requiring the defendants to comply with certain discovery protocols. The plaintiffs ask this Court to prioritize discovery in this adversary proceeding over discovery in the state actions, order that discovery here should not be duplicated in the state actions, rule that discovery conducted here will be admissible in the state actions, and rule that any deponent deposed in this adversary proceeding will not be required to appear for deposition in any of the state actions.

On February 6, 2024, only four business days prior to the scheduled start of the evidentiary hearing on the plaintiffs' motion for preliminary injunction, which has been set for months, the plaintiffs filed a motion asking for leave to further amend the relief requested in the Complaint. ECF No. 231. The Court has yet to hear the motion to amend. If granted, the plaintiffs would be seeking two injunctions. First, the plaintiffs would ask this Court to enjoin the defendants "from enforcing, including, without limitation, by injunctive relief, against property of the estate . . . including, without limitation, actions that result in the cancellation, rescission, or modification of any Homeowner Benefit Agreements . . . memoranda, mortgages, or any proceeds of the foregoing, pending a trial on the merits by the state trial court in the Primary State Actions." This relief is a component of that requested in the first and third requests for relief in the current Complaint. Granting this relief would still make preliminary injunction orders entered last year in Massachusetts and North Carolina substantially unenforceable. Although this request for relief would no longer extend the plaintiffs' protection through the appeals process, it would prevent any of the defendants

from obtaining enforceable pretrial relief otherwise available under applicable non-bankruptcy law.  Second, the plaintiffs would ask for essentially the same injunction regarding enforcement of monetary awards as that requested in the second request for relief in the present Complaint.

### PENDING STATE ACTIONS ARE EXCEPTED FROM THE AUTOMATIC STAY

Upon the commencement of a bankruptcy case, 11 U.S.C. § 362(a) imposes an automatic stay prohibiting the continuation of suits against the debtor or property of the estate and actions to obtain control over property of the estate, among other things.  Section 362(b)(4) provides an important exception to the automatic stay for certain actions by governmental units.  Under this provision, the automatic stay under sections 362(a)(1), (2), (3), and (6) does not apply to any action or proceeding of a governmental unit "to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a monetary judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power."  In this case, it is noteworthy that the exception to the automatic stay specifically cross-references subsection (a)(3), which would otherwise stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  Under section 362(b)(4), when exercising its police and regulatory power, a governmental unit may pursue the debtor *and* property of the estate, and obtain and enforce any resulting judgment or order, other than collect a money judgment.  The Court need not elaborate further on this provision as it appears undisputed that all of the defendants' pre-bankruptcy suits against the plaintiffs are covered by the exception.  The Court has already confirmed this at the request of certain of the defendants.  ECF Nos.  170, 171, 172, and 414; Case No. 23-17590.

The police and regulatory power exception to the automatic stay exhibits an important Congressional policy that governmental efforts to protect life, safety, and welfare of their

citizens should not come to a halt in bankruptcy. The "bankruptcy court is not a haven for wrongdoers." Collier on Bankruptcy ¶ 362.05[5][a]. By limiting this exception to prevent collection of monetary awards, claims are funneled to the bankruptcy court so that governmental creditors may share in distributions from the bankruptcy estate according to their statutory priorities.

ABILITY TO ENJOIN POLICE AND REGULATORY POWER ACTIONS

Although a governmental unit's action to enforce its police and regulatory power is excepted from the automatic stay, this Court may nonetheless enjoin such an action under 11 U.S.C. § 105. *LTL Mgmt., LLC v. New Mexico (In re LTL Mgmt., LLC),* 645 B.R. 59, 80-81 (Bankr. D.N.J. 2022); *Brennan v. Poritz (In re Brennan),* 198 B.R. 445, 449 (D.N.J. 1996) (citing cases and legislative history); *see also Louisiana PSC v. Mabey (In re Cajun Elec. Power Coop, Inc.),* 185 F.3d 446, 457 n.18 (5th Cir. 1999). A bankruptcy court may rely on section 105(a) to "enjoin actions that are excepted from the automatic stay . . . in exceptional circumstances." *Off. Comm. Of Unsecured Creditors of Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.),* 378 F.3d 511, 523 (5th Cir. 2004) (quoting *In re Cajun Elec. Power Coop, Inc.,* 185 F.3d at 457 n.18); *see also In re Commonwealth Oil Refining Co.,* 805 F.2d 1175, 1188 n.16 (5th Cir. 1986) (listing cases from numerous jurisdictions). The Court may exercise this discretion only where "there is a serious conflict between a governmental unit's exercise of state police power and the policy of the bankruptcy code." *In re LTL Mgmt., LLC,* 645 B.R. at 81; *see also Penn Terra Ltd. v Dep't of Env't Res.,* 733 F.2d 267, 273 (3d Cir. 1984) (court may enjoin a police power action where it "run[s] so contrary to the policy of the Bankruptcy Code that it should not be permitted") and *In re Brennan*, 198 B.R. at 451-52 (section 105 injunction of police power action is appropriate only where the state action "seriously threatens the bankruptcy process").

There are several reported decisions addressing the circumstances where a bankruptcy court may enjoin an action otherwise excepted from the automatic stay under section 362(b)(4). The Court need not catalog them here. However, the plaintiffs rely on one particular decision that warrants comment. In *FiberTower Network Services Corp. v. FCC (In re FiberTower Network Services Corp.)*, 482 B.R. 169 (Bankr. N.D. Tex 2012), the bankruptcy court enjoined the FCC from canceling and re-auctioning the debtors' licenses until entry of a final, non-appealable order. The court found that there was no evidence that if the debtor was eventually successful against the FCC that the debtor could regain licenses that the FCC had canceled and re-auctioned to another user and that the debtor's business would be seriously disrupted or destroyed. *Id.* at 188. Here, the plaintiffs cannot dispute that even if the defendants obtain preliminary or final relief restricting their business operations, if the plaintiffs are eventually successful in the state actions at trial or on appeal their rights could be restored in full. The *FiberTower* decision is an outlier based on its unique facts.

THIS COURT WILL NOT RULE ON THE STATE ACTIONS

Much of the presentation in the defendants' Motions to Dismiss is based on the incorrect assumption that the plaintiffs ask this Court to rule on the merits of the state actions. As is clear from the relief requested in the Complaint, discussed in detail above, the plaintiffs do not ask this Court to actually rule on the matters pursued by the defendants elsewhere. In this adversary proceeding, the Court need not and will not rule in any final way with regard to any of the defendants' claims now pending as addressed in the Complaint.

When considering a request for injunction under 11 U.S.C. § 105(a), bankruptcy courts typically consider whether the debtor has a reasonable likelihood of successful reorganization, rather than a reasonable likelihood of success in any particular litigation. *Bestwall LLC v. Off. Comm. of Asbestos Claimants (In re Bestwall LLC)*, 71 F.4th 168, 184

(4th Cir. 2023); *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1095-96 (9th Cir. 2007). Here, however, the plaintiffs' potential for success in the state actions is a necessary consideration in determining whether they have a reasonable likelihood of successful reorganization. If the defendants are successful in the state actions, the affected plaintiffs may be substantially or completely unable to realize the benefits of the HBAs. The HBAs are the plaintiffs' only source of revenue. To determine whether the plaintiffs have a reasonable likelihood of successful reorganization, the Court would be called on to consider the probability and extent of each plaintiff's success in the state court actions. But in doing so the Court would not actually rule on the merits of the claims presented in the defendants' actions. The Court need only address in a summary manner each plaintiff's chances of prevailing. Indeed, any statement of this Court with regard to the ultimate ruling in the state actions would be *dictum*, and would have no preclusive effect, as it would not be necessary to a ruling in this adversary proceeding.

DEFENDANTS WAIVED SOVEREIGN IMMUNITY FOR THIS PROCEEDING

The defendants argue that the Court must dismiss this adversary proceeding because they have not waived their sovereign immunity to permit this suit. Most of the defendants' arguments are based on the faulty assumption that the plaintiffs ask this Court to rule on the merits of the defendants' claims in the state actions. Nevertheless, the issue merits further attention.

The United States Supreme Court has held that, by ratifying the Constitution including the Bankruptcy Clause in Article I, the states subordinated their sovereign immunity in the bankruptcy arena. *Cent. Va. Cmty. College v. Katz*, 546 U.S. 356 (2006). This means that the states are subject to suit on claims pursued in furtherance of laws enacted by Congress under the Bankruptcy Clause. To determine whether a proposed action

may be brought against a state, courts look to whether the action is a proceeding necessary to effectuate the *in rem* jurisdiction of the bankruptcy court. *Id.* at 378.

After *Katz*, the Eleventh Circuit provided guidance on this issue in *Florida Department of Revenue v. Diaz (In re Diaz)*, 647 F.3d 1073 (11th Cir. 2011). The *Diaz* court described the *Katz* theory as "consent by ratification" and focused the analysis on whether the proceeding in question furthers one of the three critical *in rem* functions of bankruptcy courts. These are: (1) the bankruptcy court's exclusive jurisdiction and control over property of the estate; (2) the equitable distribution of that property among creditors; and (3) the discharge of the debtor. *In re Diaz*, 647 F.3d at 1084 (quoting *Katz*, 546 U.S. at 363-64).

The defendants' state actions implicate two of these functions: this Court's exclusive jurisdiction and control over property of the estate, and the equitable distribution of that property among creditors. Among other relief, the state actions seek to void the HBAs and documents recorded in connection with them, or otherwise seek to limit the plaintiffs' ability to realize value from them. Those agreements and documents, and the rights represented by them, are property of the estate. Any value the debtors can recover from those assets would be included in an equitable distribution of property among creditors. In the Complaint (including if it is amended as requested), the plaintiffs ask this Court to prohibit interference with property of the estate and any equitable distribution that may follow. The plaintiffs' requested injunctions would effectuate the *in rem* jurisdiction of the bankruptcy court.

While the rulings in *Katz* and *Diaz* establish the outside limit of Congress's ability to codify waiver of sovereign immunity in the bankruptcy context, that does not mean that Congress must permit claims against the states to that ultimate extent. In other words, nothing requires Congress to permit every claim that it could authorize against the states. *See Katz*, 546 U.S. at 379. It is still appropriate to consider whether section 106(a) is an

impediment to the claims pursued here.  Clearly it is not, as section 106(a)(1) specifically includes section 105.

For these reasons, the states' request to dismiss on the basis of sovereign immunity will be denied.[3]

## MANDATORY ABSTENTION DOES NOT APPLY

The defendants argue that the Court must abstain from this adversary proceeding under 28 U.S.C. § 1334(c)(2), which provides as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

The defendants argue that there is no independent federal jurisdiction for the state actions pursued by the defendants, so this adversary proceeding is at most "related to" the plaintiffs' chapter 11 cases.  They argue that this suit does not invoke federal bankruptcy law and is one that could exist outside of bankruptcy, so it is not a core proceeding.  They argue that their own actions pending in other tribunals may be timely adjudicated there.

The weakness of the defendants' arguments rests in large part on the faulty assumption that this Court must look to the state enforcement actions themselves to determine jurisdiction.  Again, the Court need not and does not intend to rule on the merits of any of the claims the defendants now have pending against the plaintiffs.

---

[3] The deadline for governmental entities such as the defendants to file proofs of claim is March 20, 2024.  Although none of the defendants has filed a proof of claim, it is extremely unlikely they will fail to do so as they would then have no right to distributions from these cases.  If any defendant files a proof of claim, they would waive sovereign immunity in any matter that bears a direct relationship to the Court's adjudication of that claim, which likely would include the relief requested in this adversary proceeding.

The defendants cite the Supreme Court's decision in *Celotex* for the proposition that, where an injunction of a state case is requested, this Court must assess its potential jurisdiction over the state case to be enjoined rather than over the adversary proceeding seeking the injunction. *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995). The defendants then argue that their enforcement actions are at most "related to" the bankruptcy case. But the Supreme Court did not decide that question. *Id.* at 309 n.7, 311 n.8 ("We thus need not (and do not) reach the question whether the granting of the Section 105 Injunction was a 'core' proceeding." and "One might argue, technically, that though the proceeding to execute on the bond is 'related to' the title 11 case, the stay proceeding 'arises under' title 11, or 'arises in' the title 11 case. We need not and do not decide this question here." (citation omitted)).

In this adversary proceeding, the plaintiffs seek relief solely under 11 U.S.C. § 105(a), relief that can be considered only by this Court, the court presiding over the plaintiffs' bankruptcy cases. A request for relief under section 105(a) "arises under" title 11 as that provision is in fact part of title 11.

In the Complaint, including as it may be amended under the pending motion, the plaintiffs seek an injunction explicitly to protect property of the estate in the form of contract rights under the HBAs and documents recorded in connection therewith. The defendants respond based on the merits of their claims, meaning they argue that the plaintiffs should have no or severely limited rights under those contracts and recorded documents. That the plaintiffs may eventually be unsuccessful in their litigation with the defendants elsewhere does not negate the fact that the aim of the plaintiffs' request here is to implement the purposes of the Bankruptcy Code as reflected in section 541(a), a central provision of the statute establishing the very *res* that forms the basis of the Court's equitable jurisdiction. The plaintiffs' request for relief also "arises in" these cases under title 11 as its purpose is to preserve assets for eventual distribution to creditors. Multiple courts have ruled that

exercise of the injunctive power under section 105(a) is a core matter under 28 U.S.C. § 157(b)(2)(A) as it "concerns administration of the estate". *Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.)*, 801 F.2d 60, 64 (2d Cir. 1986); *Carabetta Enters. v. City of Asbury Park (In re Carabetta Enters.)*, 162 B.R. 399, 403-04 (Bankr. D. Conn. 1993); *In re Monroe Well Serv., Inc.*, 67 B.R. 746, 753 & n.9 (Bankr. E.D. Pa. 1986); *In re HBG Servicenter, Inc.*, 45 B.R. 668, 671 (Bankr. E.D.N.Y. 1985).

For these reasons, mandatory abstention under 28 U.S.C. § 1334(c)(2) does not apply here.

PERMISSIVE ABSTENTION APPLIES

The defendants argue that the Court should abstain from this adversary proceeding under 28 U.S.C. § 1334(c)(1), which provides as follows:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

When applying permissive abstention under section 1334(c)(1), courts often refer to fourteen factors other courts have found useful. *E.S. Bankest v. United Beverage Florida (In re United Container LLC)*, 284 B.R. 162, 176 (Bankr.S.D.Fla.2002). Even so, none of those factors is controlling and courts have discretion to determine the relative weight afforded each factor. *Gradco Corp. v. Blankenship (In re Blankenship)*, 408 B.R. 854, 861 (Bankr.N.D.Ala.2009).

In light of the explicit statutory directive to consider "the interest of comity with State courts or respect for State law," in the circumstances of this case the Court gives particular weight to the impact of the requested injunctions on the sanctity of the judicial process in the defendants' litigation against the plaintiffs as well as the importance of the state interests

implicated in those actions.  In the various state matters, the defendants pursue relief under statutes designed to protect their citizens from fraudulent and harmful schemes, and statutes and regulations designed to ensure that properly qualified entities and individuals provide certain services to the public.  These are interests historically policed by the states, consistent with the concepts of federalism embodied in the Constitution.  The plaintiffs ask this Court to insert itself in the litigation of these matters in unusual ways, eliminating substantive rights that may be available to the defendants, such as pretrial relief under applicable non-bankruptcy law, and providing procedural benefits not otherwise available to the plaintiffs. This is the case even if the Complaint is amended consistent with the pending motion. Interests of comity with the state courts and administrative bodies where the defendants' matters are pending, and respect for state law, weigh heavily in favor of permissive abstention.

If the Court abstains from this adversary proceeding, such abstention will have little impact on the "efficient administration" of the plaintiffs' bankruptcy cases.  The plaintiffs do not ask this Court to enjoin the state actions outright.   The plaintiffs intend to continue that litigation through judgment or final administrative determination.  If the Court granted the relief requested, the plaintiffs' time and expense in the state actions would not be affected. Even if the relief requested in the Complaint is narrowed as requested in the pending motion to amend, what the plaintiffs seek is an order negating any pretrial relief the defendants may obtain, including that already obtained.  The obvious goal of this request is to preserve the plaintiffs' ability to generate revenue under the HBAs even if rulings in the state actions would curtail or eliminate that ability.  The concept of "efficient administration" does not entail preserving every possible revenue source for a debtor.  This phrase refers primarily to the activities unique to a bankruptcy case and asks the Court to consider whether failing to enter the injunction would substantially hamper those activities.  Abstaining from this

adversary proceeding will have no meaningful impact on administration of these cases in that sense.

In the circumstances of this case, and in light of the relief requested in the Complaint (even if amended), the interests of comity and respect for state law far outweigh any countervailing factors under the usual analysis.  The Court will abstain from this adversary proceeding under 28 U.S.C. § 1334(c)(1).

### REQUESTED RELIEF IS NOT A PROPER EXERCISE
### OF THE SECTION 105(a) INJUNCTION POWER

Even if all of the allegations in the Complaint were proven, it is not appropriate to issue a section 105(a) injunction designed specifically to tilt the playing field against the defendants in their police and regulatory actions.  Although several bankruptcy courts have enjoined actions otherwise excepted from the automatic stay under section 362(b)(4), the Court was unable to find any instance of such an injunction under circumstances similar to these other than the *FiberTower* decision distinguished above.

The relief requested in the current Complaint is remarkable.  Other than the plaintiffs' request for an order funneling claims against the estate to this Court, which is procedurally and substantively unnecessary, the plaintiffs ask this Court to place a weighty finger on the scales by ordering that even if they lose in the state actions that the rulings cannot take effect until after the plaintiffs have exhausted all rights of appeal including, potentially, seeking Supreme Court review.  In their proposed amendment, the plaintiffs eliminate some of their offensive requests, but persist in asking the Court to effectively prohibit pretrial relief in the defendants' litigation.  The requested injunctions would essentially invalidate preliminary injunctions already entered in Massachusetts and North Carolina.  Even if applicable non-bankruptcy law would permit the defendants to obtain preliminary rulings that the relevant plaintiffs' HBAs or recorded documents are illegal

and/or unenforceable under applicable law, the plaintiffs want this Court to bless the plaintiffs' ongoing reliance on those documents to collect from homeowners, forcing the state defendants to continue to litigate while their citizens suffer.

All of the foregoing analysis applies equally with regard to the plaintiffs' requests for injunctive relief in favor of the plaintiffs' chief executive, members of their board of managers, and individual real estate brokers affiliated with the plaintiffs.

Because the Complaint, even if amended as proposed, fails to state a proper claim for relief under 11 U.S.C. § 105(a), this adversary proceeding is due to be dismissed under Fed. R. Civ. P. 12(b)(6), made applicable here by Fed. R. Bankr. P. 7012(b). This is a separate reason to dismiss this adversary proceeding.

## ORDER

For all of the foregoing reasons, it is ORDERED and ADJUDGED as follows:

1.      The Motions to Dismiss [ECF Nos. 55, 61, 65, and 68] are GRANTED IN PART to the extent provided in this Order.

2.      The Court hereby abstains from this adversary proceeding under 28 U.S.C. § 1334(c)(1).

3.      This adversary proceeding is DISMISSED.

4.      All pending motions are denied as moot.

5.      The Clerk is directed to close this adversary proceeding.

### ###

Copies to all parties to this adversary proceeding by
Michael D. Seese, Esq.
who shall file a certificate of service thereof.